UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE S.,[1]

                                        Plaintiff                    DECISION and ORDER

-vs-                                                                 1:22-CV-06203 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI")

benefits and Supplemental Security Income ("SSI") benefits.   Plaintiff maintains that such

determination is "not supported by substantial evidence and [is] based on a faulty residual

functional capacity (RFC)" assessment.[2]   Now before the Court is Plaintiff's motion (ECF

No. 6) for judgment on the pleadings and Defendant's cross-motion (ECF No. 7) for the

same relief. For reasons discussed below, Plaintiff's application is granted, Defendant's

application is denied, and the matter is remanded to the Commissioner for further

administrative proceedings.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."
[2] ECF No. 6 at p. 1.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[3] which significantly limits his physical or mental ability to do basic work activities.[4] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[6]

---

[3] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[4] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[5] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[6] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

*otherwise.*") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

Also, when considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the

Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ...."))."; *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.   The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

On December 27, 2019, Plaintiff applied for SSDI and SSI benefits, claiming that she became disabled from working on December 1, 2015, due to ailments including basal joint arthritis in her hands and migraine headaches.

At the Commissioner's request, on March 11, 2020, Plaintiff underwent a consultative internal medicine examination by Harbinder Toor, M.D. ("Toor"), who issued a report detailing his findings.   Toor began his report by making a comprehensive list of Plaintiff's statements about her impairments, stating in pertinent part:

> She also has a history of chronic pain bilaterally in the hands since many years.   She has osteoarthritis.   The pain is sometimes sharp, 8/10 on the scale of 1-10 in the hands.   Sometimes she gets stiffness, swelling in the wrists or hands.   Grasping, holding, writing is difficult.   She also has a history of pituitary tumor since a few years.   She gets migraine headache which varies in intensity and frequency.   Sometimes she gets migraine every day.

Tr. 819.   Toor noted that Plaintiff came to the appointment wearing prescribed braces on her hands, which she took off for the examination.   Upon examination, Toor found, in pertinent part, that Plaintiff had tenderness and stiffness in the wrists bilaterally, slightly decreased sensation and burning sensation to touch and pinprick in the hands bilaterally, and full strength in the upper and lower extremities. Tr. 821.   Toor included a section in his report entitled "Fine Motor Activity of Hands," stating:

> Hand and finger dexterity is not intact in both hands.   Grip strength is 2/5 bilaterally in both hands.   She has difficulty putting the finger with the thumb in both hands.   She has moderate to marked difficulty grasping, holding, writing, tying the shoelace, zipping the zipper, buttoning the button, manipulating a coin or holding object with the hand.

Tr. 821.   For his medical source statement, Toor stated in pertinent part: "She has moderate to marked limitation doing fine motor activity with the hands.  . . .   Pain and headache can interfere with her routine." Tr. 821.

The Commissioner reviewed Toor's report and Plaintiff's other medical records and denied Plaintiff's applications.   In that regard, on April 17, 2020, agency review physician J. Lawrence, M.D. ("Lawrence") determined, based on a review of the records, that Plaintiff had severe impairments including "carpal tunnel syndrome" and "migraine," but that her statements about her symptoms were not entirely consistent with the medical evidence and evidence of her activities of daily living. Tr. 67.   Lawrence noted Plaintiff's subjective claim that her hands were too painful to lift anything, that she frequently dropped things, and that she had constant headaches and dizziness. Tr. 70.   However, Lawrence opined that Plaintiff was capable of work involving lifting and carrying up to 20 pounds occasionally, and lifting and carrying up to 10 pounds frequently.   Lawrence stated that Plaintiff had an "unlimited" ability to reach and "handle (gross manipulation)," but a limited ability to "finger (fine manipulation)" bilaterally. Tr. 69.   Lawrence did not indicate that Plaintiff had any work limitations due to her headaches, except environmental limitations. Tr. 72 (exposure to noise).

In making this finding, Lawrence noted Toor's opinion that Plaintiff had "moderate to marked difficulty with grasping, holding, writing, tying, zipping, buttoning, manipulating

8

coin or holding object." Tr. 66.   Additionally, Lawrence seems to have agreed that Plaintiff had "marked" limitations with those functions. Tr. 69 (When asked, "explain exertional limitations and how and why the evidence supports your conclusions," and told "cite specific facts upon which your conclusions are based," Lawrence wrote: "EMG of carpal tunnel with prescribed splints.   Claimant marked difficulties with grasping, holding, writing, tying, manipulating coin or holding object.").   Further, Lawrence commented that Dr. Toor's report was consistent with the totality of the evidence in the file. Tr. 68 ("CE MD opinion consistent with totality of evidence in file.").   At the same time, however, as already noted, Lawrence appears to have disagreed with Toor by indicating that Plaintiff had an "unlimited" ability for "handling (gross manipulation)." Tr. 69.   When asked to explain the "manipulative limitations," Lawrence wrote: "bilateral CMC OA mod on the left and mild on the right; mild right CTS." Tr. 69.

In a separate document, "Electronic Request for Medical Advice," bearing the same date as the opinion just discussed, Lawrence again appears to disagree with Dr. Toor's findings concerning Plaintiff's ability to use her hands.   Specifically, under the heading "advice," Lawrence wrote, in pertinent part: "Chart was reviewed.   . . .   *CE hand exam is unsupported in the MER* [(medical evidence of record)].   Based on the MER clmt has a light PRFC with non-exertional limitations." Tr. 871 (emphasis added).[7]

In connection with a request for agency reconsideration by Plaintiff, on July 7, 2020, agency review physician C. Krist, D.O. ("Krist") also reviewed the record.   Krist

---

[7] By indicating that Plaintiff had a light RFC, Lawrence also disagreed with the disability analyst seeking Lawrence's advice, whose proposed RFC was "sedentary with occasional for fine and gross motor manipulation." Tr. 870.

found that Plaintiff had severe impairments including "carpal tunnel syndrome" and "migraine," but that her statements about her symptoms were not entirely consistent with the "objective evidence in file." Tr. 94-95.   Krist stated that Plaintiff was capable of light work involving lifting and carrying up to 20 pounds occasionally and lifting and carrying up to 10 pounds frequently.   Regarding Plaintiff's use of her hands to work, Krist opined that Plaintiff had an "unlimited" ability to reach and "handle (gross manipulation)," but a limited ability to "finger (fine manipulation)" bilaterally. Tr. 95-97.   More specifically, Krist stated that Plaintiff was capable of "frequent fine motor" activity with her hands bilaterally. Tr. 97.[8]   Krist did not indicate that Plaintiff had any work limitations due to her headaches, except environmental limitations. Tr. 97 (noise).

In making this report, Krist asserted that Dr. Toor's opinion was "consistent" with the totality of the evidence in the file. Tr. 94-95.   However, Krist appears to have disagreed with Toor by indicating both that Plaintiff had an "unlimited" ability for "handling (gross manipulation)," and that Plaintiff could perform frequent fine motor activity with her hands.[9]   Additionally, on July 7, 2020, the same day that Krist wrote the report just discussed, Krist completed another document entitled "Electronic Request for Medical Advice," stating in pertinent part: "I was able to find a fairly normal physical exam from Jan 2016.   The vast majority of TS notes both before and after 4/17/20 document *normal or near normal grip* b/l [bilaterally]." Tr. 936 (emphasis added).   Accordingly, Krist apparently also disagreed with Toor's findings of reduced grip strength.

---

[8] Unlike Lawrence, who did not quantify the frequency with which Plaintiff could perform manipulations, Krist stated: "CLMT is limited to frequent fine motor b/l [bilaterally]." Tr. 97.
[9] Again, Krist also did not find that Plaintiff would be off-task due to headaches.

After Plaintiff's claim was denied initially and on reconsideration, on December 15, 2020, she had a hearing before an ALJ, at which she and a VE testified.   At the time of the hearing Plaintiff was 46 years of age, had completed high school and some college, and had worked as a marketing administrative assistant, childcare worker, secretary/receptionist, and home health aide. (Tr. 37-39).   Plaintiff indicated that she stopped working in 2010, because she was pregnant and had been limited to bed rest due to complications from the pregnancy. (Tr. 40).

Plaintiff testified that she later became disabled due to a wide variety of physical problems,[10] including migraine-type headaches and arthritis in her hands.   Plaintiff stated that she began having migraine headaches in or about 2005, that continued through the present.   Plaintiff indicated that she had severe headaches every day, each lasting a "couple hours." (Tr 41).   Plaintiff stated that medications were not helpful for the headaches, and that they required her to lie down and rest in a dark room. (Tr. 41, 51). Plaintiff indicated that she developed osteoarthritis in her hands in or about 2012. (Tr. 42). Plaintiff stated that her hands are "weak," that she "can't use [her] thumbs," that she "can't carry anything," and that she "drop[s] everything." (Tr. 41).   Plaintiff indicated that she has difficulty lifting things, grasping things, holding things, handling small objects, and performing tasks involving her thumbs. (Tr. 44-45).   Plaintiff testified that she sees a pain management specialist for her hands, who gives her regular periodic injections, and that she wears hand braces that prevent her from moving her thumbs and wrists. (Tr. 42, 44).

---

[10]  Plaintiff testified about headaches, problems with her wrists, problems with her right eye, heavy menstrual periods lasting two or three weeks, problems with her left leg, pain from a hernia incision, nausea from medications, poor sleep, and asthma.

Plaintiff indicated that her medical problems left her unable to do much of anything, and that her mother had to come to her house each day to assist with childcare and basic chores. (Tr. 43, 49).

After Plaintiff finished testifying, the ALJ asked the VE a series of four hypothetical questions.   First, the ALJ asked the VE to consider a claimant capable of, *inter alia*, light work involving frequent fingering bilaterally, and the VE indicated that such a claimant could perform one of Plaintiff's past jobs.   In the second hypothetical, the ALJ asked the VE to consider a claimant capable of light work who could finger bilaterally only occasionally, and the VE stated that such a claimant could not perform Plaintiff's past work but could perform several other, particular jobs.   In hypothetical number three, the ALJ asked the VE to consider a claimant capable of sedentary work who could finger bilaterally frequently, and the VE again identified several particular jobs that could be performed.   Finally, the ALJ asked the VE to consider a claimant capable of sedentary work who could only occasionally finger bilaterally, and the VE indicated that there was a single job that such a claimant could perform, surveillance system monitor.   None of the ALJ's hypothetical questions asked the VE to factor in time off-task due to headache pain or other pain.

On January 20, 2021, the ALJ issued a Decision (Tr. 16-27) finding that Plaintiff was not disabled at any time between December 1, 2015, and the date of the Decision. The ALJ conducted the five-step sequential evaluation and found, in pertinent part, at steps two and three, that Plaintiff had severe impairments consisting of "osteoarthritis in wrist and the hands bilaterally; bilateral carpal tunnel syndrome (CTS); ovarian cyst;

lipoma in the left leg, status post-surgery; thyroid tumor; pituitary tumor; migraine; and asthma," which did not, either singly or combined, meet or medically-equal a listed impairment. (Tr. 18-19).   The ALJ then found that Plaintiff had the RFC to, *inter alia*, perform less than a full range of light work, involving only occasional fingering bilaterally. (Tr. 20).

The ALJ explained this RFC finding by stating, first, that Plaintiff's statements concerning her symptoms were "inconsistent" and "not entirely reliable." (Tr. 21) ("Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.").   As examples of such inconsistency, the ALJ stated that despite claiming to be completely disabled, Plaintiff was able to dress and bathe herself, hold a cup, manage her finances, read occasionally, and help her children with their remote schoolwork during the Covid-19 lockdown. (Tr. 21).

Next, the ALJ reviewed the medical treatment records concerning Plaintiff's hands, which he interpreted as generally indicating that Plaintiff received good relief from her hand injections, which generally lasted for several months at a time, contrary to what Plaintiff indicated. *See, e.g.*, Tr. 22 ("The claimant continued with cortisone injections in her thumbs in October 2017 and February 2018.   She admitted to relief for about 3 months and did not want surgery.  . . .   At the hearing, the claimant admitted that she continues to get shots every 3 months or so; therefore, this condition is managed with treatment, despite her complaints.").   On this point, the ALJ observed that the evidence

indicated Plaintiff's hand condition remained stable and had not worsened, contrary to what she stated at the hearing. *See*, Tr. 23 ("She had the same range of motion of her wrists and fingers in 2020 as she did in June 2019, when she first treated with Dr. Day. Her condition did not worsen as alleged at the hearing.   In December 2020, the claimant still had the same range of motion.").

The ALJ also referred to other findings from physical examinations that he found were consistent with the ability to finger occasionally.   For example, the ALJ discussed the consultative physical exam in pertinent part as follows:

> Dr. Harbinder Toor, MD, examined the claimant on March 11, 2020.   . . . The claimant had normal neurological functioning except for "slightly" decreased sensation in her hands, but her strength was normal in all extremities.   She had no muscle atrophy.   Her grip strength was 2/5 bilaterally.   The claimant had difficulty pulling the finger with the thumb in both hands.   She had moderate to marked difficulty grasping, holding, writing, tying the shoelace, zipping the zipper, buttoning the button, manipulating a coin or holding object with the hand.   . . .   [Dr. Toor] opined: She has moderate to marked limitation doing fine motor activity with the hands.   . . .   Overall, she is limited to light exertion, given her normal strength.   However, she could only occasionally finger, given her hand pain and reduced grip.

Tr. 25; *see also,* Tr. 23 ("Her exam noted the claimant had some pain of the wrist bilaterally but overall she had 5/5 wrist extension and flexion.   She was advised to avoid 'repetitive' upper extremity use or reaching activities, the cause pain.   This is consistent with occasional fingering[.]").

Regarding Plaintiff's headaches, the ALJ noted that Plaintiff claimed to have "constant severe migraines since 2015," "on a daily basis," that essentially incapacitated her.   Again, however, the ALD indicated that he found Plaintiff's subjective complaints to

"not be entirely reliable." Tr. 21.   The ALJ noted, for example, that in 2019, Plaintiff was complaining of headaches, but that she had normal neurological functioning. Tr. 23. The ALJ also indicated that in February 2020, Plaintiff complained to her treating doctor of "daily migraines," but that she "did not appear in any distress" and "[h]er exam was normal." (Tr. 23).   Plaintiff's doctor advised her "to try Triptan for her migraines." (Tr. 23). The ALJ stated that Plaintiff was still complaining of headaches in October 2020, but "her physical exam was normal." Tr. 24.   Further, the ALJ discussed the consultative exam findings by Dr. Toor, in pertinent part as follows: "The claimant's history of . . . migraines . . . was noted.  . . .   Toor diagnosed the claimant with:  . . .  8. History of migraine headache.  . . .   He opined:   Pain and headache can interfere with her routine." Tr. 25. The ALJ indicated the he found Toor's opinion "persuasive" overall, and supportive of the RFC finding, adding: "She developed migraines in late 2019 but they are not as frequent as alleged.  . . .   She would be limited to 'moderate' noise to prevent any migraine aggravation." Tr. 25.

Notably, the ALJ indicated that the opinions of Toor, Lawrence, and Krist were "consistent" with the evidence of record and with each other. Tr. 25.   In that regard, the ALJ stated that the found all three opinions "persuasive," and did not indicate that he found any inconsistency between them. Tr. 25.

The ALJ went on to find that, with the subject RFC, the Plaintiff could not perform any of her past work, but that she could perform other jobs existing in sufficient numbers in the economy that were identified by the VE, namely, "school bus monitor," DOT 372.667-042,  and  "sandwich  board  carrier,"  DOT  299.687-014.  Tr.  27,  54.

Consequently, the ALJ found that Plaintiff was not disabled.    Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. Tr. 1-4.

On May 4, 2022, Plaintiff commenced the subject action.   Plaintiff contends that the Commissioner's decision is "not supported by substantial evidence and [is] based on a faulty residual functional capacity (RFC) [finding]."[11]   Plaintiff maintains that the ALJ erred by failing to properly account for her hand arthritis and headaches in the RFC finding.   More specifically, Plaintiff contends that the RFC finding is not supported by substantial evidence since the ALJ seemingly ignored evidence concerning the extent of her limitations and failed to adequately explain why he did not adopt all the limitations contained in Dr. Toor's report.

Defendant disagrees and insists that the ALJ's decision is free from error and supported by substantial evidence.

The Court has considered the parties' submissions and the entire administrative record.

DISCUSSION

To the extent Plaintiff contends that remand is required simply because the ALJ did not adopt all the limitations in Toor's report, her argument lacks merit, since an ALJ's RFC finding need not mirror any single medical opinion. *See, Davis v. Kijakazi*, No. 21CV8485VECBCM, 2023 WL 5726054, at *12 (S.D.N.Y. Aug. 18, 2023) ("Regardless of how many medical source statements the ALJ receives – or the weight he assigns to

---

[11] Plaintiff is only challenging the denial of her application for SSI benefits.

them – the determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion. *See Camille v. Colvin*, 652 F. App'x 25, 29 n.5 (2d Cir. 2016) (summary order) ("An ALJ may accept parts of a doctor's opinion and reject others."), report and recommendation adopted sub nom. *Davis v. Comm'r of Soc. Sec.*, No. 21-CV-8485 (VEC), 2023 WL 5723011 (S.D.N.Y. Sept. 5, 2023).   The issue for the Court, rather, is whether the ALJ's RFC finding is supported by substantial evidence. *See, id.* ("[I]t is the ALJ's prerogative to make an RFC assessment after weighing the evidence and the District Court may not reverse provided there is substantial evidence in the record to support her findings.").

However, insofar as Plaintiff argues that the ALJ failed to adequately explain his RFC finding, and to explain why he did not adopt all the limitations identified by Dr. Toor, the Court finds that the argument has merit.

On this point, the Second Circuit has held that an ALJ's failure to adequately explain how he resolved inconsistencies in medical opinions when making an RFC finding may result in a finding by the court that the RFC finding is not supported by substantial evidence:

> [I]n reviewing an ALJ's findings, we assess whether "substantial evidence lies in support of the ALJ's determination." *Colgan* [*v. Kijakazi*], 22 F.4th [353,] 359 [(2d Cir. 2022)]. "[T]he substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations." *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)). We take this approach in assessing how an ALJ considers "internal inconsistencies" in the medical records before him. *See id.* at 362. Here, the ALJ's rejection of Rivers's disability claim appears to rely in large part on an internally inconsistent report from a consulting physician hired by the Social Security

Administration to assess Rivers's functional capacity. The consulting physician's report says Rivers "was unable to stand and walk on heels and toes. She was unable to squat. Can walk on heels and toes without difficulty. Squat full." Record on Appeal 1255. Despite this plain contradiction, the ALJ gave this "opinion ... some weight" and read it as supporting the conclusion that Rivers is "less restricted" by her disability because it found she "was able to walk on heels and toes." Special App'x 17. The ALJ provides no explanation of why he gave preference to the part of the report cutting against Rivers's claim over the preceding sentences that would support her claim. Faced with such an obviously contradictory medical opinion like this, the ALJ should have either sought clarification from the consulting physician or, at minimum, given a cogent explanation in support of his reading of the opinion.

*Rivers v. Kijakazi*, No. 21-1935-CV, 2023 WL 2485467, at *2 (2d Cir. Mar. 14, 2023).

Additionally, since Plaintiff's claim was filed after March 27, 2017, the ALJ was required to evaluate the medical opinion evidence in accordance with 20 C.F.R. § 416.920c(b)(2), which states, in pertinent part, that, "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." *Id.*   An ALJ's failure to apply this regulation is a procedural error that may require remand:

The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2).

With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2).

***

An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). [12] However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2 (N.D.N.Y. Sept. 20, 2022).

In this case, the Court observes, first, that the ALJ committed a procedural error with regard to his evaluation of the opinions by Toor, Lawrence, and Krist, since he discussed the consistency but not the supportability of the opinions. Tr. 25.   Moreover, the Court cannot say that the error was harmless, since the ALJ failed to identify or resolve inconsistencies in those same medical opinions.   As discussed above, the opinions from Lawrence and Krist are internally inconsistent in that they assert that Toor's opinion is consistent with the medical evidence overall, but then disagree with Toor's opinion as

---

[12]  The Second Circuit has indicated that an ALJ should provide some degree of explanation on these points beyond merely indicating, for example, that he or she finds that an opinion is, or is not, well supported or consistent with the record. *See, Loucks v. Kijakazi*, 2022 WL 2189293 at *2 ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record.   . . .   [T]he ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.") (emphasis added).

19

being inconsistent with such evidence.   The opinions of Lawrence and Krist are also inconsistent with Toor's opinion itself, since Toor indicated that Plaintiff had moderate-to-marked limitations with regard to her use of the *hands and fingers*,[13]  while Lawrence and Krist indicated that Plaintiff only had limitations fingering.   Moreover, Toor indicated that Plaintiff's pain and headaches could interfere with her routine, but Lawrence and Krist did not include any functional limitation for Plaintiff's headaches, except to limit her exposure to noise.[14]

The ALJ, however, did not comment on these inconsistencies, apparently since he found that the opinions were all consistent with the record and with each other. Consequently, the ALJ did not acknowledge that the opinions of Lawrence and Krist were less-restrictive than the opinion from Toor, or explain why he adopted only the limitations contained in the reports by Lawrence and Krist, but not the additional limitations identified by Toor, who had actually examined Plaintiff.

Additionally, the ALJ rather summarily rejected the evidence concerning Plaintiff's headaches with the mere assertion that the headaches "are not as frequent as alleged," without explaining that finding or citing any evidence in support of that statement.[15] Tr.

---

[13]  *See*, Tr. 821 (Toor's Report: "*Hand and finger* dexterity is not intact in both hands.   *Grip strength is 2/5* bilaterally in both hands.   *She has difficulty putting the finger with the thumb in both hands*.   She has *moderate to marked difficulty grasping, holding*, writing, tying the shoelace, zipping the zipper, buttoning the button, manipulating a coin or holding object with the hand.") (emphasis added).

[14]  Merely limiting Plaintiff's exposure to noise strikes the Court as inadequate to address her headache pain, since she indicated that she gets daily headaches regardless of whether she is exposed to noise.

[15]  Defendant's brief, citing to page 10 of the ALJ's decision (Tr. 25), asserts that when making this finding, the ALJ "considered" various treatment notes, in which "Plaintiff denied headaches during several medical visits." ECF NO. 7-1 at p. 20.   Defendant additionally cites other such evidence in the record that could lend support to the ALJ's finding. *Id*.   However, those are speculative and impermissible *post hoc* arguments by the Commissioner, since the ALJ himself did not actually offer any such explanations.

25 ("She developed migraines in late 2019 but they are not as frequent as alleged."). Consequently, the Court is unclear as to why the ALJ found that Plaintiff's headaches were not as frequent as she claimed, particularly since it is undisputed that she has a pituitary adenoma that could cause such headaches.

For these reasons, the Court finds that the ALJ's decision is affected by legal error and/or unsupported by substantial evidence, and that remand is required for further administrative proceedings.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 6) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 7) for the same relief is denied, the administrative decision is vacated, and the matter is remanded to the Commissioner for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
      September 29, 2023

ENTER:

CHARLES J. SIRAGUSA
United States District Judge